STATE OF MISSOURI, Respondent, *v.* JOHN MANSFIELD, Appellant.

1. *Supreme Court—Criminal Practice—Evidence—Appeals.*—On appeals or writs of error in criminal cases, the Supreme Court will examine the evidence given upon the trial, and will reverse the judgment if the verdict be not supported by the evidence.

2. *Constitution—Jury—Crimes—Misdemeanors.*— Upon the trial of parties indicted for capital crimes and felonies, the prisoner cannot waive his constitutional right to a trial and verdict by a jury of twelve good and competent jurors. In cases of misdemeanors, where the penalty is a fine merely, he may waive his right and may accept the verdict of less than twelve jurors, or submit to a trial by the court.

*Appeal from Sixth District Court.*

*Dryden & Lindley*, for appellant.

I. A defendant indicted for felony cannot be tried even with his own consent by a jury of less than twelve men. The reasons for this rule are well expressed in Concini v.

State, 18 N. Y. 128 ; see also Neales v. State, 10 Mo. 498 ; State v. Moody, 24 Mo. 566.

If the defendant can consent to be tried by eleven jurors, he can consent to be tried by any less number, or by the court alone without a jury ; but any such proceeding would surely be void as contrary to the provisions of §§ 1 & 2, ch. 213, R. C. 1865, which, by limiting the right of the defendant to consent to be tried without a jury to the case of a misdemeanor, evidently denies it in cases of felony. And in construing these sections of the statute reference should be made to the case of Neales v. State, 10 Mo. 498.

II. This court will look into the record and see if the verdict of the jury is warranted by the evidence.

The rule in civil cases, that this court will not reverse although the verdict is against the weight of evidence, does not apply to criminal trials for felony. This distinction is made by the Supreme Court of Tennessee, in Davis v. State, 2 Humph. 439. The court says, "The rule that this court will not grant a new trial upon the facts unless the jury shall appear to have been guilty of great rashness, does not apply to criminal cases. In such cases new trials have been constantly granted upon its conviction that the verdicts were not warranted by the proof"—Kirby v. State, 3 Humph. 289 ; Bidford v. State, 5 Humph. 552 ; 7 id. 419 & 544. This rule seems to be recognized by this court in passing upon the sufficiency of evidence in the case of the State v. Ebert, appealed from St. Louis Court of Criminal Correction, and heard before this court at the last term. But should the court hold otherwise, still this case comes fairly under the other branch of the rule, that "this court will reverse when there is no evidence to warrant the verdict." In the trial of this case in the Circuit Court the evidence against the defendant was altogether circumstantial, and the rule in such cases is that the jury cannot convict upon a mere preponderance of evidence, nor any weight of preponderating evidence, but the evidence must be such as to exclude every hypothesis but that of the guilt of the accused—3 Greenl. Ev. §§ 29 & 137.

If the court therefore sees that the evidence does not exclude every reasonable hypothesis consistent with the innocence of the accused, it is equivalent to an entire failure of evidence in a civil case.

*S. Voullaire,* for appellant.

A jury trial must consist of twelve jurors—Brown v. State, 8 Blackf. 561; Concini v. People, 18 N. Y. (4 Smith) 128; 7 Abb. Pr. 271.

In felony cases the defendant must be personally present during the trial—State v. Cross, 27 Mo. 332; Rose v. State, 20 Ohio, 31; State v. Buckner, 25 Mo. 167; State v. Braunschweig, 36 Mo. 397; State v. Schoenwald, 31 Mo. 147; G. S. of Mo. 1865, p. 850, § 15.

The court will examine the evidence in the cause, and grant a new trial if the evidence is not against the defendant —State v. Bird, 1 Mo. 585; State v. Packwood, 26 Mo. 340; State v. Simms, 2 Bailey, 29; Copeland v. State, 7 Humph. 470; State v. Brosius, 39 Mo. 535; Webster College v. Tyler, 35 Mo. 268; Morris v. Barnes' Adm'r, 35 Mo. 412; Hart v. Leavenworth, 11 Mo. 629.

This court will set aside the verdict in a case for the misconduct of a judge, attorney, and others—2 Whart. Crim. Law, §§ 3136 & 3157; 2 Hale P. C. 308 (marg.); Whitney v. Whitman, 5 Mass. 405; Hix v. Drury, 5 Pick. 296; Fulwer v. Scott, Whart. Dig. 355.

*B. B. Kingsbury,* for respondent.

I. The verdict will not be set aside if there is any evidence to support it—Dodge v. Brittain, 7 Meigs, (Tenn.) 84; England v. Burt, 7 Humph. 399: and the rule applies as well to criminal as civil cases—McCune's case, 2 Rob. 771; Hill's case, 2 Grat. 594. Judge Scott, in State v. Anderson, 19 Mo. 241, says: "We know no distinction between civil and criminal cases. When the verdict of a jury comes here endorsed by the refusal of the court which tried the cause to grant a new trial, this court will not interfere on the ground

that the evidence does not support the verdict. Jurors are the appropriate judges of the facts as the court is of the law.

II. The trial by a jury of eleven men, by consent of prisoner and counsel, is no such error as requires the interposition of this court. No objection was made in the Circuit Court, nor was such action alleged for error in the lower appellate court. It was a provision (the trial by twelve jurors) which the prisoner might waive—Commonw. v. Dailey, 12 Cush. (Mass.) 80; Murphy v. Commonw., 1 Metc. (Ky.) 365; Tyree v. Commonw., 2 id. 1; 1 Bish. on Crim. Proc., ch. 25, § 422 et seq., § 762; Baxter v. The People, 3 Gilm. 368.

It being admitted that the accused may waive some right provided by law for his protection, the question arises whether the unanimity of a jury of twelve men—a principle which now prevails only in this country and England, and in those jurisdictions may be waived in civil cases, and recently often is waived—is such a right that he cannot waive it. This court has unquestionably observed the maner in which verdicts are forced from juries, often being only the expression, for the sake of being released from confinement, of an apparently agreed opinion on the guilt or innocence of the accused. (See opinion of Dr. Francis Lieber in October number of Law Register.) The case of the People v. Concini was one in which the prisoner was indicted for murder, and every provision *in favorem vitæ* on the trial of a man accused of a capital crime was strictly secured, and the case should not be held as authority in any except capital cases.

WAGNER, Judge, delivered the opinion of the court.

Whilst the law is firmly established in this State that it is not the province of this court in civil cases to weigh the evidence or disturb the discretion of the lower courts in maintaining. or setting aside verdicts, it is equally well settled that in criminal cases we·have never abandoned our right to interfere where the record shows that manifest injustice has been committed, or the verdict is not supported by the evi-

dence. We will not say here that the verdict is wholly un-sustained by the evidence, but the testimony is certainly very weak on which to base a conviction. There are circum-stances, it is true, which go far to identify the accused with guilty participation in the burglary and larceny charged in the indictment, but it is doubtful whether these would have been sufficient to have produced the verdict had it not been for the action of the court which will be presently referred to.

One Harrold was jointly indicted with the defendant for the same offence, and previously convicted and sentenced in the same court, and on appeal the judgment was affirmed here. Upon the trial of the defendant, the court in giving instructions for the State gave the same indentical instruc-tions which had been given in Harrold's case, with the en-dorsement written thereon, " Instructions by court, State v. Harrold." The counsel for the prosecution, in his closing address to the jury, was permitted to allude to the fact that Harrold had been convicted for the same offence, and that they were both in company when found directly after the crime was committed.

Now all this might well have exerted an injurious influ-ence over the minds of the jury. The fact that Harrold and defendant were jointly indicted, and that the jury were acting under the identical instructions given in Harrold's case, would seem to warrant them in making the inference, that they had the sanction of the court for finding a verdict of guilty, without stopping to inquire whether the evidence was precisely the same in the two trials. In truth, the evi-dence was not the same, for there was no such evidence made to identify the defendant's tracks by measurement as there was in Harrold's case.

When the jury were called, twelve men were selected and empannelled to try the cause. On the next morn-ing one of the jurors failed to answer, and it was stated that he was sick. It was then agreed, the prisoner consenting thereto, that the trial should proceed with eleven jurors, and accordingly the eleven jurors heard the cause and rendered

the verdict. The question is now directly presented to the court for decision, whether upon an indictment for felony the defendant can waive his constitutional right to be tried by a legal jury of twelve men.

The 17th section of our Declaration of Rights says that the right of trial by jury shall remain inviolate. Whenever there is a constitutional guaranty of the right of trial by jury, the jury must be composed of twelve men—Vaughn v. Scade, 30 Mo. 600, and authorities cited in the opinion; 2 Bennett & Heard's Lead. Crim. Cas. 327, and note. A jury must consist of twelve men, no more, no less; no other number is known to the law, and they must appear upon the record to have rendered their verdict—Rex v. St. Michaels, 2 Blackst. 719; Dixon v. Richards, 2 How. 771; Jackson v. The State, 6 Blackf. 461; Brown v. The State, 8 Blackf. 561; 22 Ohio, 296. "The petit jury," says Chitty, "must consist of precisely twelve, and is never to be more or less, and this fact it is necessary to insert upon the record. If therefore the number returned be less than twelve, any verdict must be ineffectual and the judgment will be reversed on error"— 1 Chit. Crim. Law, 505.

It has been held that, in mere cases of misdemeanor, the Legislature might provide for their prosecution in a summary manner, notwithstanding the constitutional declaration, that " no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces," the clause having reference to felonies and the higher grades of crimes—State v. Ledford, 3 Mo. 73 ; State v. Cowen, 29 Mo. 330; State v. Ebert, 40 Mo. 186. The statute now allows a defendant to be tried by the court without a jury, in cases of certain misdemeanors, if he waives his right to have a jury ; but before the enactment of this statute it was decided that the judge of a court could not try a defendant in a criminal case upon a plea of not guilty even by his consent ; that a jury could alone try such a plea (Neales v. The State, 10 Mo. 498) ; and this opinion was held when the proceeding was a prosecution for a misdemeanor.

In Kentucky, when the prosecution is for misdemeanors, the courts hold, that where the penalty is imposed for a fine, an agreement by the defendant to be tried by a jury constituted of a less number than twelve persons, is not inconsistent with any rule of law or with public policy, and that a judgment rendered upon their verdict is valid—Murphy v. Commonw., 1 Metc. (Ky.) 365 ; Tyree v. Commonw., 2 Metc. (Ky.) 1. The reasoning in support of the opinion is, that nothing more is involved in the issue of such a case than is frequently involved in the decisions of actions in civil cases. The validity of such an agreement in the cases last named cannot be questioned. The citizen has an undoubted right to make any disposition of his money or his property which is not prohibited by law. He may, when his right to any part of it is controverted, consent to have the controversy decided by the court without the intervention of a jury, or by a majority of the jury, or by any number of persons acting in the capacity of jurors, and such an agreement would be obligatory upon him. And so in prosecutions for misdemeanor, where the penalty imposed is simply a fine, the only contest is about money and property, and the defendant may consent to waive some of the prescribed formulas of trial.

In Commonw. v. Dailey, 12 Cush. 80, the same doctrine is held, that, upon a trial for misdemeanor, if the defendant's counsel consent that one juror may be withdrawn and the case proceed with the remaining eleven, which consent is duly entered of record, a verdict of guilty will not be set aside because rendered by only eleven jurors. Notwithstanding the opinion of the learned Chief Justice (Shaw), whilst arguing on general principles, seems to indicate that such agreements might be upheld in almost all cases, yet he expressly limits the decision to the case under consideration, and the case therefore can only be cited as an authority, that in a trial for misdemeanor a party may waive his right to a full jury by consent. But even this proposition was denied by this court in Neale's case, when there was no statute authorizing such a proceeding.

Blackstone and other legal writers call the right of trial by jury a sacred right. In King v. Perkins (Holt's Rep. 403, fol.), decided in 1698, Holt, C. J., said that it was the opinion of all the judges in England, upon debate between them, that in all capital cases a juror could not be withdrawn though the parties consented to it.—See also Carthew, 465; 1 Inst. 227, b.; Cro. Cas. 484.

In the trial of Lord Dacres for treason, in the reign of Henry VIII., the question was presented whether the prisoner might waive a trial by his peers and be tried by the country, and all the judges of the Court of King's bench agreed that he could not, for the statute of Magna Charta was in the negative and the prosecution was at the instance of the King. Professor Wooddeson, in his Lectures, says, the same was again resolved on the arraignment of Lord Dudley, in the seventh year of the reign of Charles I., and that the reason was that the mode of trial was not so properly a privilege of the nobility as a part of the indispensable law of the land, like the trial of commoners by commoners enacted, or rather declared by Magna Charta. And in 3 Inst. 30, it is stated that a nobleman cannot waive his trial by his peers, and put himself upon the trial of the country—that is, of twelve freeholders—for the statute of Magna Charta is that he must be tried *per pares*.

The two most recent cases decided in America deny that in a criminal case the defendant can be tried by a jury composed of less than twelve persons even by his consent, and assert that a verdict rendered against him by a jury constituted with anything less than the legal and constitutional number will be a nullity. The question arose in one case where the trial was on an indictment for murder in the first degree, and in the other where the prisoner was charged with the offence of kidnapping—Concini v. People, 18 N. Y. 128; Commonw. v. Shaw, 7 Am. Law Reg. 289.

In the former case the court draws a line of distinction between stipulations of this character made in civil and criminal cases, on the ground that in criminal prosecutions the

31—VOL. XLI.

penalties, or punishment for the enforcement of which they are the means to the end, are not within the discretion or control of the parties accused ; for no one has the right by his own voluntary act to surrender his liberty or part with his life. Another good and sufficient reason, it occurs to us, is, that the prisoner's consent cannot change the law. His right to be tried by a jury of twelve men is not a mere privilege ; it is a positive requirement of the law. He can unquestionably waive many of his legal rights or privileges. He may agree to certain facts and dispense with formal proofs; he may consent to the introduction of evidence not strictly legal, or forbear to interpose challenges to the jurors ; but he has no power to consent to the creation of a new tribunal unknown to the law to try his offence. The law in its wisdom has declared what shall be a legal jury in the trial of criminal cases ; that it shall be composed of twelve ; and a defendant, when he is upon trial, cannot be permitted to change the law, and substitute another and a different tribunal to pass upon his guilt or innocence. The law as to criminal trials should be based upon fixed standards, and should be clear, definite, uniform, and absolute. If one juror can be withdrawn, there is no reason why six or eight may not be, and thus the accused through persuasion or other causes may have his life put in jeopardy, or be deprived of his liberty, through a body constituted in a manner unknown to the law. Aside from the illegality of such a procedure, public policy condemns it. The prisoner is not in a condition to exercise a free and independent choice without often creating prejudice against him.

The observations of Abbott, C. J., in regard to the consent of the defendant in another matter, are equally applicable here : " I think the consent of the defendant in such a case ought not to be asked, and my reason for thinking so is, that if that question is put to him he cannot be supposed to exercise a fair choice in the answer which he gives ; for it must be supposed that he will not interpose any obstacle to it, for if he refuses to accede to such an accommodation, it will excite

that feeling against him which every person standing in the situation of a defendant would wish to avoid "—King v. Woolf, 1 Chit. 401. So in Terry v. Buffington, 11 Ga. 337, the court says that it is the duty of courts to administer justice according to law, and it is irregular and improper to call upon counsel or parties to waive any legal right in the presence and hearing of the jury who are charged with the case. In the midst of a trial it will frequently happen that where one or more of the jurors become disabled and cannot continue to sit, that if the prosecuting attorney makes the proposition to proceed with the remainder of the jurors, the prisoner cannot withhold his consent without making an injurious impression—the very thing which, of course, the prisoner would be most anxious to avoid. The attorney for the State has no right to make any such a proposition, nor the prisoner any right to consent to it. It has been found necessary and wise to institute trial by jury as a shield and safeguard for the protection of prisoners accused of crime, and they are not to be allowed even by consent to dispense with or forego that protection guaranteed to them by law.

In case of misdemeanors created by statute, the Legislature may provide for their prosecution in a summary way and without the formality of indictment, and the accused may waive a jury or agree on a certain number; but in those offences, including capital crimes and felonies, which under the Constitution can only be proceeded with by indictment and presentment of a grand jury, and can only be tried by a petit jury, the jury must be composed of twelve persons, and their verdict must be unanimous.

The judgment must be reversed and the cause remanded. Judge Holmes concurs; Judge Fagg absent.